**The PEOPLE of the State of Colorado, Complainant,**

v.

**Joseph P. GENCHI, Attorney–Respondent.**

**Nos. 91SA336, 91SA351.**

Supreme Court of Colorado, En Banc.

Feb. 3, 1992.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Joseph P. Genchi, pro se.

PER CURIAM.

These two attorney discipline proceedings have been consolidated for purposes of one opinion and order. In No. 91SA336, a hearing panel of the Supreme Court Grievance Committee recommended that the respondent be suspended from the practice of law for six months for violations of the Code of Professional Responsibility. In No. 91SA351, the same hearing panel recommended that the respondent receive a public censure for additional misconduct. We accept the recommendations of the hearing panel in each case.

I

The respondent was admitted to the bar of this court on April 17, 1970, is registered as an attorney upon this court's official records, and is subject to the disciplinary jurisdiction of this court and its grievance committee in all matters relating to the practice of law. C.R.C.P. 241.1(b). After listening to the testimony of witnesses called on behalf of the complainant and the respondent, including the testimony of the respondent himself, and considering other evidence in the form of exhibits introduced by both parties, the hearing board in each proceeding found that the following facts had been established by clear and convincing evidence.

No. 91SA336

■ The hearing board in No. 91SA336 found that the respondent had violated the Code of Professional Responsibility in two separate ways. The first instance of misconduct involved the respondent's behavior during and immediately after a deposition that the respondent took on June 8, 1989, as the attorney for the plaintiff in a slip and fall case. The purpose of the deposition was to preserve for trial the testimony of Dr. Earle Howard, who was the plaintiff's treating physician and the only expert witness that the respondent intended to call on behalf of the plaintiff.

During the course of the deposition which was held at the deponent's office, it became clear that Dr. Howard's testimony would not be as favorable to the plaintiff as the respondent had hoped. The respondent's conduct toward the deponent and opposing counsel became abusive, insulting, and unprofessional. After the deposition was concluded, the respondent and Doctor Howard exchanged uncomplimentary observations and physical threats. The respondent left the room where the deposition was taken, proceeded down a hallway towards the reception area, and shoved Mrs. Howard, who had also confronted him.

The hearing board concluded, and we agree, that the respondent's conduct at the deposition violated DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), and DR 1–102(A)(6) (a lawyer shall not engage in other conduct that adversely reflects on the lawyer's fitness to practice law). *People v. Bottinelli*, 782 P.2d 746, 752 (Colo.1989).

The hearing board also found that between January 1986 and March 1990, and in January 1991, the respondent had filed numerous motions for continuances or other extensions of time, citing ill health.[1] The board determined that in several specific instances the respondent misused the legitimate procedures for seeking continuances by using health as an excuse when he was ill-prepared for trial or as a backup when some other ground for continuance failed.[2]

When approved by the hearing panel, the board's factual findings are binding on this court unless, after considering the record as a whole, the findings are unsupported by substantial evidence. *People v. Bennett*, 810 P.2d 661, 665 (Colo.1991). The hearing board, when acting as a fact finder, has the duty to assess the credibility of evidence before it, controverted and uncontroverted. *People v. Distel*, 759 P.2d 654, 662 (Colo.1988). The respondent has not filed with this court a transcript of the hearing before the board, and we cannot say that the board's findings are unsupported by the record before us. We therefore conclude, as did the board, that the respondent's misuse of the procedures for granting continuances and extensions of time violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice).

*See People v. Yaklich*, 646 P.2d 938, 939–40 (Colo.1982) (failing to keep client advised of status of case, pattern of setting several matters in different courts at same time, failing to appear at scheduled time before courts and lack of candor with at least one judge as to the reason for not appearing in court warrants three-month suspension).

The hearing panel approved the findings of the board in No. 91SA336, but modified the board's recommendation that the respondent be suspended for three months to a recommendation for a six-month suspension. The assistant disciplinary counsel elected not to file exceptions to the panel's report, and the respondent did not file exceptions to the findings and recommendation of the hearing panel in the manner required by C.R.C.P. 241.20(b).[3] Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), in the absence of aggravating or mitigating factors, "[s]uspension is appropriate when a lawyer knows that he is violating a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." *ABA Standards* 6.22. The board did not explicitly consider the presence or absence of aggravating or mitigating circumstances, but did

1. The respondent and his wife were seriously injured in an automobile accident in August 1989. Accordingly, no evidence regarding the respondent's practice of seeking continuances was presented to the hearing board for the period of time between July 1, 1989, and January 1, 1990.

2. In addition to the evidence of the respondent's specific conduct in seeking continuances or extensions of time, the deputy disciplinary counsel also introduced statistical evidence of the respondent's practice of seeking continuances or extensions in trial and appellate courts between 1975 and 1985. As one of the members of the hearing board pointed out in a separate concurrence to the board's report, it is unclear what the statistical evidence proves, or fails to prove. Our conclusion that the respondent violated the Code of Professional Responsibility is not based on the statistical evidence presented by the deputy disciplinary counsel.

3. The respondent filed in this court a motion to dismiss or remand the proceedings in No. 91SA336 to the hearing panel. He alleges that the hearing panel acted without subject-matter

jurisdiction when it met on August 3, 1991, to consider the hearing board's report since the time period for filing objections to the report had not yet expired.

By his own admission, however, the respondent received the hearing board's report on July 22, 1991. A party must file any objections within ten days of receipt of the report. C.R.C.P. 241.15(a). Since the time period for filing objections begins to run only upon a party's actual receipt of the report, there is no merit to the respondent's contention that the ten-day period is extended by three additional days if the report is sent by mail. *Cf.* C.R.C.P. 6(e) (allowing three additional days for a party to take prescribed action when service of certain documents is made by mail; under C.R.C.P. 5(b) such service is complete upon mailing). The respondent's objections were therefore due on August 1, 1991. The objections that the respondent filed on August 6, 1991 were untimely and the hearing panel's meeting on August 3 was not improper. The respondent's motion to dismiss or remand the proceedings is denied.

note that the respondent had previously received a letter of admonition, a private censure in 1979, and another private censure in 1991.

After considering the record and the circumstances apparent from the record, we conclude that the seriousness of the respondent's misconduct warrants a suspension for six months and we accept the recommendation of the hearing panel.

## II

### No. 91SA351

■ The hearing board in No. 91SA351 found that the respondent had engaged in two separate instances of professional misconduct. In the first, the respondent was retained by the complaining witness, John Corica, and thirty-six other property owners to represent them in their efforts to collect the damages they had sustained when the Lawn Lake Dam in Rocky Mountain National Park collapsed in July 1982. The respondent was ultimately involved in three lawsuits arising out of the dam's failure. One lawsuit, which was filed against the United States pursuant to the Federal Tort Claims Act, was dismissed on summary judgment. *See Aldrich Enters., Inc. v. United States*, 938 F.2d 1134 (10th Cir.1991) (upholding district court's summary judgment in favor of the government and order denying reconsideration; in FTCA action the United States could not be held liable under theory of absolute liability or negligence for the damages resulting from the collapse of Lawn Lake Dam).

The second lawsuit was an interpleader action, and it resulted in the distribution of a fraction of the negotiated damages to the property owners. The third action was filed in Larimer County District Court against the State of Colorado.

On August 9, 1989, the respondent and his wife were very seriously injured in an automobile accident, and the respondent was confined to the hospital for about two months. In early September 1989, the respondent received $25,000 in settlement of the third action. The settlement had been negotiated by the respondent prior to his

accident. On September 7, 1989, the respondent's daughter deposited $25,000 into the respondent's trust account. The respondent withdrew his twenty-percent legal fee, $5,000, from the trust account on September 25, 1989.

Mr. Corica and his daughter learned of the settlement for the first time through an article in a local newspaper and attempted to contact the respondent. The respondent wrote to Mr. Corica and to the other claimants on November 3, 1989, and stated that the settlement funds would be distributed within a few weeks. However, as of March 25, 1990, the Coricas had not received their share of the settlement funds. After Mr. Corica filed a request for investigation with the Office of Disciplinary Counsel, the respondent hired an accountant to assist him in the distribution of the settlement proceeds. On May 26, 1990, the respondent distributed to Mr. Corica and those clients he had been able to locate their share of the settlement plus interest for the period of time the money remained in trust.

The hearing board determined, and we agree, that the respondent's failure to promptly distribute the proceeds of the settlement violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer), and DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive). *People v. Swan*, 764 P.2d 54, 56 (Colo.1988) (failing to communicate with client and improperly dealing with client's funds warrants public censure). The injuries that the respondent sustained in his automobile accident may excuse some reasonable postponement of the disbursement, but the eight-month delay here was unjustified and unreasonable. Moreover, as the board found, the respondent's delay in distributing the proceeds was inconsistent with his representations to the local community and to this court that he would be able to competently handle his law practice by January 1990.

On or about September 19, 1988, the respondent filed a dissolution of marriage

petition on behalf of his client, Rajean Hankins. Hankins was the spouse of the complaining witness, Andrew Watts. On May 4, 1989, the respondent was ordered to prepare the final decree and order. This was more than ninety days before the respondent's automobile accident.

Watts filed a request for investigation with the grievance committee because the respondent had not submitted the final decree and order as of April 9, 1990. The final decree and order was not presented to the court until July 26, 1990. We agree with the hearing board that the respondent's delay in preparing the decree was unreasonable and violated DR 6–101(A)(3) (neglect of a legal matter), and DR 1–102(A)(5) (conduct prejudicial to the administration of justice).

The hearing panel recommended that the respondent receive a public censure in No. 91SA351. As in No. 91SA336, neither of the parties has filed exceptions to the hearing panel's findings and recommendation.[4] With respect to the respondent's delay in disbursing the settlement proceeds, *ABA Standards* 4.14 provides that a private censure "is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client."

Further, public censure is warranted "when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." *Id.* at 4.43. The respondent's failure to prepare the final decree and order for over a year in the Watts matter presented at least the potential for injury. The board found the presence of the following factors in aggravation: (1) prior discipline, *id.* at 9.22(a); (2) a dishonest or selfish motive, *id.* at 9.22(b); (3) a pattern of misconduct, *id.* at 9.22(c); (4) multiple offenses, *id.* at 9.22(d); (5) the respondent's refusal to acknowledge the wrongful nature of his conduct, *id.* at 9.22(g); and (6) substantial experience in the practice of law, *id.* at 9.22(i).

In mitigation, the board noted that some of the respondent's prior disciplinary offenses were remote in time. *Id.* at 9.32(m). The respondent's personal problems, *id.* at 9.32(c), and physical disabilities, *id.* at 9.22(h), which were caused by the automobile accident were found to be important factors in mitigation. We nevertheless conclude that the mitigating factors, when balanced against the aggravating factors, are insufficient to justify a sanction less than public censure. Accordingly, we accept the recommendation of the hearing panel in No. 91SA351.

### III

In No. 91SA336 it is hereby ordered that Joseph P. Genchi be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is also ordered that Genchi be publicly censured for his misconduct in No. 91SA351. It is further ordered that Genchi pay the combined certified costs of these two proceedings in the amount of $2,865.30 within ninety days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.

---

4. The respondent requested, and was granted, an extension of time in which to file exceptions. No exceptions were ever filed, however.