The PEOPLE of the State of
Colorado, Complainant,

v.

Jay E. GOLDSTEIN, Attorney–
Respondent.

No. 94SA110.

Supreme Court of Colorado,
En Banc.

Dec. 19, 1994.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Michael L. Gilbert, Denver, for attorney-respondent.

PER CURIAM.

A hearing board in this attorney discipline proceeding found that the respondent, Jay E. Goldstein, entered a plea of guilty to and was convicted of the criminal offense of forging a United States Bankruptcy Court Judge's signature, fabricated and forged two legal docu-

ments, and knowingly misrepresented material facts to his employer on client matters with the knowledge that the misinformation provided would be relayed to the client. The board, by a two to one vote, recommended that the respondent be suspended from the practice of law for three years and assessed the costs of the disciplinary proceedings. The third member dissented in favor of disbarment. A hearing panel of the Supreme Court Grievance Committee agreed with the board's findings and conclusions, but recommended disbarment and the assessment of costs because the sanction of suspension was too lenient in light of the misconduct involved. After consideration of the record and briefs in this matter, we accept the panel's recommendation and order that the respondent be disbarred.

## I.

The respondent was admitted to the bar of this court on November 14, 1986. He is registered as an attorney upon this court's official records and is subject to the jurisdiction of this court in all matters relating to the practice of law. C.R.C.P. 241.1(b). On September 7, 1993, the respondent was immediately suspended from the practice of law because of the criminal conviction that forms part of the basis for this proceeding.

The circumstances giving rise to this proceeding stem from two separate legal matters that were entrusted to the respondent's care. The first of the two involved the respondent's handling of a bankruptcy proceeding that will be referred to as the "Weldona Gun Club Matter." The second involved another bankruptcy proceeding that will be referred to as the "Sullivan Case."

The parties entered into a Stipulation of Facts. In addition, the hearing board received exhibits and heard the testimony of witnesses called by the assistant disciplinary counsel and the respondent. The facts of this case are as follows:

### A.

#### The Weldona Gun Club Matter

The respondent was employed by Skeen & Pearlman, P.C. (the firm) in 1992 and during the early months of 1993. The firm represented Janice Steinle, the bankruptcy trustee (the trustee) in the Chapter 7 bankruptcy proceeding of Lawrence Edward Jansen.

Jansen owned a partnership interest in the Weldona Gun Club, and the firm was to obtain the bankruptcy court's approval for the sale of that partnership interest. Several other of the gun club partners also wanted to sell their interests, and an agreement was reached between the group and a prospective purchaser on February 19, 1992. The respondent was assigned by the firm to handle this sales transaction and, as part of his responsibilities, the respondent was directed to:

1) draft an agreement for the sale of the Weldona Gun Club interests;

2) file a motion with the United States Bankruptcy Court for the District of Colorado seeking approval for the sale;

3) prepare a notice, pursuant to the Local Rules of Bankruptcy Procedure, Rule 23 [now appearing as Local Bankruptcy Rule 202 (as amended on July 1, 1993)], to advise creditors and other parties of the proposed sale;

4) prepare a form order for the bankruptcy judge's signature;

5) prepare an assignment for execution by the trustee in the event the sale was approved by the bankruptcy court;

6) after approval by the bankruptcy court, arrange for the exchange of the executed assignment in return for payment to the trustee; and

7) transmit the sales proceeds to the trustee.

Matthew Skeen, the firm's partner supervising the respondent on the Weldona Gun Club matter, requested regular status reports from the respondent on the pending sale. After giving Skeen some excuses for initial delay, the respondent reported to Skeen that a written agreement for the sale of the gun club interests had been executed and that the motion and accompanying "Rule 23 Notice" had been filed with the bankrupt-

cy court. These statements later proved to be false.

Subsequently, one of the gun club partners telephoned Skeen to inquire why the sale had not been consummated. This partner was concerned that the purchaser would withdraw his offer if the sale was not finalized soon. Skeen then questioned the respondent about the "discrepancy" between the respondent's earlier report that the written agreement for the sale had been executed and the partner's statement that the sale had not been finalized. The respondent explained that the bankruptcy court had not approved the sale because service of the Rule 23 Notice had been mishandled by the Clerk of the Bankruptcy Court. This statement later proved to be false. The respondent assured Skeen that he would remedy the problem promptly.

Thereafter, another individual contacted Skeen to inquire why the gun club sale had not been consummated. When questioned again by Skeen, the respondent reported that the "Rule 23" problem had been remedied and that he was awaiting the imminent receipt of an order from the bankruptcy court approving the sale. This statement later proved to be false.

On January 13, 1993, the trustee telephoned Skeen and informed him that she had not seen a copy of the bankruptcy court's order approving the sale of the gun club and that she had not received the sales proceeds. When questioned, the respondent replied that he had sent the check to the trustee. This statement later proved to be false. Skeen then requested the Weldona Gun Club file, to which the respondent replied that he could not locate the file but that he would give Skeen the computer disk that contained the motion seeking approval of the sale and the proposed order. The respondent went home that same evening without giving this computer disk to Skeen. Skeen then reviewed the respondent's time records and found no entries for preparation of the sales documents. The following day, January 14, 1993, Skeen reviewed the bankruptcy court file and discovered that no motion had ever been filed.

The firm terminated the respondent's employment on January 14, 1993. At that time, the respondent admitted that he had never filed a motion with the bankruptcy court for approval of the sale, had never prepared a Rule 23 Notice, and had never obtained a court order approving the sale. The respondent insisted, however, that he had received and transmitted a check for $8,000.00 in sales proceeds for the gun club interests to the trustee.

On January 15, 1993, the respondent delivered the Weldona Gun Club file to the firm. The file contained an uncashed $8,000.00 check and a document that appeared to be a court order approving the sale of the gun club and which appeared to be signed by the Honorable Roland J. Brumbaugh, United States Bankruptcy Court Judge. Later on January 15 and on January 16, 1993, the respondent admitted to the firm's members that he had falsified the bankruptcy court judge's signature on the document that appeared to be a court order. The respondent also admitted to Skeen that he had "misstated" that he had sent the $8,000.00 check to the trustee.

On July 22, 1993, the United States District Court for the District of Colorado entered a judgment of conviction against the respondent after he entered a plea of guilty to committing the felony offense of forgery of a federal bankruptcy court judge's signature, in violation of 18 U.S.C. § 505 (1979). The district court placed the respondent on probation for three years, ordered him to continue participation in a mental health counseling program until he was released from probation by the probation officer, and ordered him to perform 150 hours of community service.

The respondent admitted that he had engaged in serious criminal conduct by falsifying a bankruptcy court judge's signature on a purported order for the sale of assets. He also admitted to neglecting a legal matter, making misrepresentations of fact to Skeen about the status of the Weldona Gun Club matter and fabricating pleadings and other documents that he told Skeen had been prepared for the bankruptcy proceedings. The respondent further admitted that his conduct

violated Rule 241.6 and Rule 241.6(5) (act that violates criminal law of the United States constitutes grounds for discipline) of the Colorado Supreme Court Rules concerning discipline of attorneys and violated the Code of Professional Responsibility, DR 1–102(A)(1) (violation of a disciplinary rule); DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 6–101(A)(3) (neglect of a legal matter). This misconduct continued on and after January 1, 1993, and further violated the Colorado Rules of Professional Conduct, Rule 1.3 (diligence); Rule 4.1 (truthfulness in statements to others); Rule 8.4(b) (criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); and Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## B.

### The Sullivan Case

Cynthia Skeen, a Chapter 7 trustee (trustee), retained the firm to assist her in handling the Chapter 7 bankruptcy estate of James Sullivan. On behalf of the firm, the respondent was assigned to collect a $40,000 judgment that had been entered in favor of the trustee and against Paul Steinbaum in the Sullivan case. In connection with collecting on that judgment, the respondent was directed to hire a private investigator to locate Steinbaum's bank accounts for purposes of garnishment and was directed to depose the bankruptcy debtor, James Sullivan, regarding his knowledge of Steinbaum's assets. Before employing the private investigator, the respondent was required to file a "Rule 23 Notice" with the bankruptcy court, a motion for approval of such employment, and a proposed order approving the employment for issuance by the bankruptcy court. Phillip Pearlman was the firm's partner supervising the respondent's work in the Sullivan case.

Over the course of several weeks, Pearlman questioned the respondent about his delay in hiring a private investigator. The respondent gave various excuses as to why the required order had not been entered by the bankruptcy court. The respondent's

statements later proved to be false. Finally, however, the respondent reported to Pearlman that the bankruptcy court's order approving the employment of a private investigator had been entered and that the investigator would soon report on his activities. These statements also later proved to be false.

Subsequently, the respondent reported to Pearlman that the private investigator was looking for Steinbaum's bank accounts without any success. This statement was not true. The respondent also stated that the private investigator had located a bank account for Steinbaum in California, another statement that was not true.

During the same time period, the respondent was instructed to arrange for Sullivan's deposition. The respondent initially reported to Pearlman that there had been some delay in obtaining the requisite bankruptcy court orders for the deposition. However, the respondent eventually advised Pearlman that Sullivan's deposition was scheduled to be taken on November 28, 1992. Neither of these statements was true. The respondent later gave Pearlman specific details of Sullivan's testimony at the deposition, including the names of people whom the respondent might contact in connection with the search for Steinbaum's assets. The deposition, in fact, had never taken place.

On January 15, 1993, the respondent admitted to members of the firm that he had never employed a private investigator, had not obtained a court order for taking Sullivan's deposition, and that he had simply "concocted all reports to Mr. Pearlman concerning the progress of the [Sullivan Case]."

In connection with the Sullivan Case, the respondent admitted that he had neglected a legal matter and made misrepresentations of fact regarding the status of a client's case. In so doing, his conduct violated Rule 241.6 of the Colorado Supreme Court Rules concerning discipline of attorneys and violated the Code of Professional Responsibility, DR 1–102(A)(1) (violation of a disciplinary rule); DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 6–101(A)(3) (neglect of a legal matter).

## II.

Phillip Pearlman filed a grievance with the Colorado Supreme Court Grievance Committee against the respondent on January 20, 1993. After investigation into the matter, the disciplinary counsel filed a complaint with the Grievance Committee against the respondent for his conduct in the two above-mentioned legal matters. The respondent ultimately entered into a Stipulation of Facts with the disciplinary counsel in which he admitted the misconduct with which he had been charged. However, the respondent maintained that although his conduct violated various disciplinary rules, there were several factors that should mitigate the severity of the discipline ultimately to be imposed.

The respondent argued before the hearing board that the most significant factor in mitigation was his mental illness, known as "success neurosis." [1] The respondent maintained that his mental illness caused him to commit the acts of misconduct and that he is recovering from his mental illness through an extensive and continuing program of psychotherapy. [2]

In support of this position, the respondent submitted a report written by his treating psychiatrist, Dr. Armin Feldman, regarding his mental condition. The report described the history and background of the respondent's condition and made the following conclusion:

Based upon the foregoing information about Mr. Goldstein, it is my opinion there is adequate medical evidence that this pa-

tient is affected by a mental disability, that is, his success neurosis. It is my opinion the patient's mental disability caused the patient's misconduct in his dealings as an attorney, including specifically his forgery of a bankruptcy judge's signature and his lying about the status of his case. The patient is currently on the road to a meaningful recovery, although, the patient is certainly not free of continued potential problems at this time. I expect the patient's treatment to arrest the behaviors that led to the patient's misconduct and the chances of reoccurrence to be unlikely.

Feldman also stated that success neurosis is a "condition which is treatable by intensive psychoanalytic psychotherapy or psychoanalysis."

In response, the disciplinary counsel submitted a written evaluation of the respondent's mental condition, prepared by Dr. Frederick M. Miller, an independent psychiatrist. Miller had met with the respondent on two separate occasions and had reviewed the entire investigatory file and associated documentation on the respondent's case, including letters written by Feldman. Miller opined that the respondent could, perhaps, be suffering from "success neurosis," but stated that

[i]t must, however, be kept in mind that most individuals with such a psychoanalytically determined disorder, do not become involved with unlawful activity and a success neurosis neither robs an individual of the ability to appreciate [the] wrongfulness of their behavior, nor of the ability to

1. The respondent's treating psychiatrist, Dr. Armin Feldman, described success neurosis in the following manner in his written report:

In layman terms, a Success Neurosis is a psychiatric condition in which a patient unwittingly and unconsciously repeats patterns jeopardizing areas of success in that patient's life. For example, a patient undermines his ability to be promoted, a patient may repeatedly distort or undo positive relationships, a patient may unconsciously undo financial success or undo any other type of successful situation which in the patient's own mind represents achievement, advancement or the completion of positive strivings.

2. The respondent also argued that as a licensed Colorado attorney with a mental illness, he is a qualified individual with a disability, as that term

is defined in the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213 (1994 Supp.) (the ADA). The respondent argued that disciplining an attorney for conduct that was caused by and is the result of a mental disability would be a discriminatory act, prohibited by the ADA. The hearing board determined that because the respondent's psychological or emotional condition did not cause the misconduct at issue, the provisions of the ADA did not apply to the disciplinary proceedings. Although the respondent's Exceptions to Findings of Fact and Recommendation of Hearing Panel filed with this court indicate that he intended to appeal the hearing board's determination on this issue, the respondent's briefs before this court contain no reference to the ADA. Accordingly, we do not address this issue.

assess the potential consequences of their decisions made, nor of their ability to adhere their conduct to the law should they choose to do so. Mr. Goldstein was not driven by compulsion or delusion to engage in the unlawful behavior chosen and acknowledges that he knew that what he was doing was wrong and unlawful, although he cannot answer the question, "Why then did I go ahead and do what I did?"

Miller concluded that this mental disability did not "cause" the misconduct at issue. Additionally, Miller wrote that "[o]ne can say that the neurosis is probably a substantial contributing cause of the events, however." Finally, Miller stated that the

> psychotherapy for such a disorder usually encompasses intensive treatment extending over a period of years, meeting more than once weekly, and of course, success cannot be assured. This disorder is one in which the individuals often act in self-defeating ways to insure that they fail in therapy just as they failed in other areas in their life.

A hearing on the matter was held before a three-member hearing board of the Grievance Committee on January 5, 1994. The only evidence presented to the hearing board pertained to factors mitigating the discipline to be imposed. In addition to the respondent's witnesses who testified to his moral character and integrity, the board heard testimony from both doctors Feldman and Miller. Feldman testified that there was a direct cause and effect relationship between the respondent's success neurosis, which the doctor characterized as a mental impairment, and the misconduct he committed. Feldman also stated that the respondent did not gain personally, financially or professionally from his misconduct, that he was undergoing a meaningful treatment process for his mental impairment, and that, given time in psychotherapy, the respondent should eventually be able to return to practicing law without the need for supervision.

Miller testified as a rebuttal witness. Miller stated that the respondent's mental disability did not cause him to commit the misconduct at issue. In answer to a question regarding his written report submitted to the hearing board, in which he had stated that the respondent's mental disability was "probably a substantial contributing cause of the events," Miller stated that he should have instead used the word "factor" or "element" rather than "cause." Miller also stated that contrary to Feldman's testimony, there was some immediate gain by the respondent from the misconduct, namely avoidance of embarrassment and delaying his having to "pay the piper."

On February 22, 1994, the three-member hearing board issued its Findings of Fact and Recommendation. The hearing board concluded that although the respondent suffers from an emotional or psychological condition,

> the specific nature of that condition was not proven by clear and convincing evidence.... The board is not persuaded by clear and convincing evidence that "success neurosis" is a "mental disability" within the meaning of Section 9.32(i), ABA Standard[s] for Imposing Lawyer Sanctions (as amended Feb. 1992).[3]

[ ] Regardless of the specific nature of the emotional or psychological condition of the respondent, however, the board finds that this condition was not principally responsible for or the direct, sole, or substantial contributing cause of the violations

---

**3.** Section 9.32 of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 and 1992 amendments) provides in pertinent part as follows:

> Factors which may be considered in mitigation. Mitigating factors include:

> . . . . .

> (i) mental disability or chemical dependency including alcoholism or drug abuse when:
>> (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

>> (2) the chemical dependency or mental disability caused the misconduct;
>> (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
>> (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

admitted by the respondent. *See,* ABA Standards, Commentary to 9.32 (as amended Feb. 1992). The board finds that the condition was, at most, only a contributing factor to respondent's pattern of client neglect. The board finds persuasive Dr. Miller's observation that respondent's mental condition did not cause his criminal conduct. The board finds that this condition had no causal relationship to the circumstances of respondent's fabrication of documents or his repeated misrepresentations to his employers.

The hearing board found the existence of the following factors in aggravation: (1) a dishonest or selfish motive on the part of the respondent, American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 and 1992 amendments) (ABA *Standards*) 9.22(b) [4]; (2) a pattern of misconduct, *id.* at 9.22(c); (3) multiple offenses, *id.* at 9.22(d); (4) substantial experience in the practice of law, *id.* at 9.22(i); and (5) illegal conduct established by entry of a plea of guilty to committing a felony offense, *id.* at 9.22(k).

The hearing board also determined that several mitigating factors existed, including (1) the absence of a prior disciplinary record, *id.* at 9.32(a); (2) a cooperative attitude toward the disciplinary proceedings, *id.* at 9.32(e); (3) good character or reputation, *id.* at 9.32(g); and (4) remorse about the misconduct leading to these proceedings, *id.* at 9.32(*l*).

The hearing board then considered whether the respondent's misconduct justified imposition of the most severe form of discipline—disbarment—or whether mitigating factors were present in sufficient number and weight to justify a lesser sanction, such as suspension from the practice of law. Two members of the hearing board concluded that the mitigating factors established by the record were sufficiently compelling to warrant a sanction less than disbarment, and recommended that the respondent be suspended from the practice of law in Colorado for a

period of three years, that the suspension run prospectively from the date suspension is ordered and not retroactively, and that the respondent be assessed the costs of the disciplinary proceedings. The third member of the hearing board dissented from the majority's recommendation and concluded that, in light of the nature and extent of the misconduct involved and the fact that the misconduct directly related to the practice of law, disbarment together with the assessment of costs was the only appropriate disciplinary measure to be imposed.

The disciplinary counsel filed an objection to the recommendation of the hearing board majority with the hearing panel of the Supreme Court Grievance Committee and requested that the hearing panel recommend disbarment. The respondent filed an objection to the hearing board's factual findings and argued that the findings concerning the role of his mental condition in causing the misconduct were contrary to the evidence presented at the January 5, 1994, hearing. The respondent also argued that the hearing board failed to include several mitigating factors that also were proven by clear and convincing evidence. Finally, the respondent argued that any discipline should be imposed retroactive to the date he was suspended from the practice of law because of his felony conviction—September 7, 1993.

A hearing panel of the Supreme Court Grievance Committee approved the hearing board's findings of fact but "modified" the majority's recommendation in favor of disbarment and assessment of costs, "because a three-year suspension would be too lenient in light of the misconduct in this case." One member of the hearing panel dissented in favor of a three-year suspension and clarification of whether other mitigating factors existed, and another member dissented in favor of tabling the matter pending clarification of whether other mitigating factors existed.

---

4. Specifically, the hearing board determined that "the respondent's fabrication of documents and multiple falsification of facts and events material to client matters made to his employer were dishonest and served the selfish motives of avoidance of embarrassment, condemnation by his employer, and termination of employment."

## III.

The respondent filed exceptions in this court to the hearing board's factual findings. The respondent here argues that the hearing board's factual findings were inconsistent with the evidence presented at the hearing in that the evidence demonstrated the presence of several additional mitigating factors. The respondent also argues that the sanction of disbarment is too severe and that any discipline imposed should be retroactive to September 7, 1993.

■■■ The hearing board's factual findings are binding on this court when they are approved by the hearing panel unless, after considering the record as a whole, the findings are unsupported by substantial evidence. *People v. Phelps,* 837 P.2d 755, 755 n. 1 (Colo.1992); *People v. Dieters,* 825 P.2d 478, 481 (Colo.1992); *People v. Genchi,* 824 P.2d 815, 817 (Colo.1992); *People v. Bennett,* 810 P.2d 661, 665 (Colo.1991). When acting as a fact finder, the hearing board must assess the credibility of all the evidence presented to it, both controverted and uncontroverted. *Phelps,* 837 P.2d at 755, n. 1; *Dieters,* 825 P.2d at 481; *People v. Distel,* 759 P.2d 654, 662 (Colo.1988). Additionally, the hearing panel's recommendation of discipline is entitled to deference, but the recommendation is advisory only and we must independently assess the proper level of discipline. *People v. Raubolt,* 831 P.2d 462, 464 (Colo. 1992); *Dieters,* 825 P.2d at 481; *People v. Whitaker,* 814 P.2d 812, 815 (Colo.1991). With these precepts in mind, we turn to the merits of the respondent's arguments.

### A.

The respondent argues here that the evidence presented at the hearing established the presence of a mental illness that caused or substantially contributed to his misconduct; the absence of a dishonest or selfish motive; a timely good faith effort to rectify the consequences of his misconduct; emotional problems; and the imposition of other penalties or sanctions. The respondent maintains that the hearing board disregarded the evidence of these mitigating factors in its findings of fact and conclusions of law.

■■■ Section 9.32 of the ABA *Standards* (1991 and 1992 amendments), provides in pertinent part as follows:

> Factors which may be considered in mitigation. Mitigating factors include:
>
> .    .    .    .    .
>
> (i) mental disability or chemical dependency including alcoholism or drug abuse when:
>
> > (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
> >
> > (2) the chemical dependency or mental disability caused the misconduct;
> >
> > (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
> >
> > (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

Thus, to establish the presence of a mental disability as a factor in mitigation, the respondent must satisfy all four elements of section 9.32(i). *See People v. Moore,* 849 P.2d 40 (Colo.1993). Additionally, the Commentary to section 9.32 provides that "[i]ssues of ... mental disability ... offered as mitigating factors in disciplinary proceedings require careful analysis. Direct causation between the disability ... and the offense must be established." ABA *Standards* 9.32 (1992 amendments).

■■■ Based on our review of the record, we are satisfied that the board's determination that the mitigating factor of mental disability had not been established was supported by substantial evidence. The evidence presented by doctors Feldman and Miller was somewhat in agreement that the respondent did, in fact, suffer from a condition known as "success neurosis." However, the evidence was conflicting as to whether that condition actually caused the misconduct at issue, an essential element of section 9.32(i). The board found that causation was lacking. Additionally, both doctors indicated that the respondent had not recovered from his disability, but rather that he was only in the

initial phases of meaningful treatment, treatment that realistically would take several years. Thus, it has not been demonstrated that the respondent has recovered from the mental disability or that the recurrence of the conduct that forms the basis for this proceeding is unlikely. Accordingly, the hearing board considered the evidence and acted within the ambit of its fact-finding authority in determining that mental disability as a mitigating factor was not present, as tested by the standards set forth in the ABA *Standards* 9.32(i) (1992 amendments). *See People v. Ogborn,* 887 P.2d 21, 23–24 (Colo. 1994) (factual finding of hearing board, based on conflicting evidence, that mental disability did not cause misconduct upheld because supported by substantial evidence).

The hearing board also concluded that one aggravating factor was the presence of a dishonest or selfish motive. We are satisfied that the record supports the hearing board's determination as to this factor. For example, the Stipulation of Facts entered into by the parties reveals that the respondent committed a serious felony offense by forging a federal bankruptcy court judge's signature. He also made numerous misrepresentations of fact to Skeen and fabricated pleadings and other documents that he told Skeen had been prepared in relation to the Weldona Gun Club bankruptcy proceeding. The respondent specifically stipulated that such conduct violated DR1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), Rule 4.1 (truthfulness in statements to others), Rule 8.4(b) (criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects), and Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Additionally, the respondent stipulated that he made numerous misrepresentations of fact to Pearlman on the Sullivan case, misrepresentations that were intended to divert attention from his neglect of the matter, and that such conduct violated DR1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation). In light of these stipulations, we are satisfied that the record supports the hearing board's determination that the respondent acted with a dis-

honest or selfish motive, an aggravating factor according to the ABA *Standards* 9.22(b).

The respondent also argues that the hearing board disregarded evidence of additional mitigating factors, namely that he suffered from personal and emotional problems, ABA *Standards* 9.32(c), that other penalties and sanctions have been imposed on him for his misconduct, ABA *Standards* 9.32(k), and that he acted in a timely, good faith manner to rectify the consequences of his misconduct, ABA *Standards* 9.32(d). With respect to the first two factors, the office of the disciplinary counsel, in its brief to this court, has conceded that the respondent had personal and emotional problems and that he received other penalties or sanctions as a result of his misconduct. More importantly, however, the presence of these factors is obvious from our review of the record. First, the respondent was convicted of the felony offense of forging a federal bankruptcy court judge's signature and sentenced to three years of probation, continuance in mental health counseling until released by the probation officer, and 150 hours of community service. Secondly, the hearing board specifically found that the respondent suffered from an "emotional condition" that gave rise to the misconduct committed. The record does not explain why the hearing board did not explicitly refer to these two mitigating factors as such; however, because they are so apparent not only from the record itself but from the findings of the hearing board, we see no basis to suggest that either the hearing board or the hearing panel failed to take them into account in recommending discipline in this proceeding. Accordingly, we reject the respondent's argument that the hearing board disregarded evidence of these factors.

The respondent's argument that he made a timely, good faith effort to rectify the consequences of his misconduct is not convincing, however. Not until the respondent was confronted by members of the firm did he confess to his misdeeds. Thus, it was only after it became clear to the respondent that his misconduct would soon be discovered that he took action to provide the firm's members with full information concerning the forgery he had committed and the true status of the

two cases. Accordingly, we conclude that the evidence does not support the respondent's contention that he made a timely, good faith effort to rectify the consequences of his misconduct.

Based on our review of the record, we are satisfied that the hearing board properly determined that the mitigating factor of mental disability, as that term is defined in the ABA *Standards* 9.32(i) (1992 amendments), was not present and that the respondent's misconduct evidenced a dishonest or selfish motive. Additionally, the record adequately reflects that the hearing board considered all relevant factors in mitigation, including personal or emotional problems and the imposition of other penalties or sanctions. Finally, we conclude that the respondent did not make a timely, good faith effort to rectify the consequences of his misconduct.

The hearing panel recommended that the respondent be disbarred for his misconduct. The respondent, however, maintains that he has established the presence of substantial mitigating factors that justify the lesser sanction of suspension. He asserts that his case is analogous to that of *People v. Preblud*, 764 P.2d 822 (Colo.1988), in which this court concluded that suspension, rather than disbarment, was appropriate for an attorney convicted of securities fraud where significant mitigating factors were present. We disagree. In *Preblud*, the respondent was imprisoned in the Leavenworth prison facility for slightly more than one year based on the sentence for his crime and spent almost four months thereafter in a Denver half-way house, was assessed a $10,000 fine, and had only indirect involvement in the fraudulent scheme for which he was convicted. Additionally, the hearing board determined that eleven mitigating factors were present in the respondent's case, including genuine remorse over his misdeeds, interim rehabilitation, inexperience in the practice of securities law, and the imposition of other significant penalties or sanctions. On review, we held that a three year suspension represented a fair accommodation of both the seriousness of the

misconduct and the weight of the mitigating factors. *Preblud*, 764 P.2d at 826.

The present case is readily distinguishable from *Preblud*. Here, the respondent was directly responsible for the forgery of a federal bankruptcy court judge's signature, a serious criminal offense. However, instead of receiving a prison sentence, the respondent was placed on probation for three years and was ordered to perform 150 hours of community service work.[5] Additionally, the respondent has not established the presence of mitigating factors of such weight as were established in *Preblud*. Thus, his case is quite different from *Preblud*, and we decline to accept the respondent's argument that suspension, rather than disbarment, is required on the basis of that precedent.

Under the ABA *Standards*, in the absence of aggravating or mitigating factors, disbarment is generally appropriate when

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; ... or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflect on the lawyer's fitness to practice.

ABA *Standards* 5.11. Here, the respondent was convicted of the egregious felony offense of forging a federal bankruptcy court judge's signature. He also engaged in multiple instances of dishonest and deceitful behavior in his handling of the two legal matters entrusted to his care. The respondent's misconduct therefore involved not only a serious crime, *see* C.R.C.P. 241.16(e), but also indifference to his professional obligations as an officer of the court.

As we said in *People v. Abelman*, 804 P.2d 859, 863 (Colo.1991):

We are mindful that the primary purpose of attorney discipline is the protection of the public, *People v. Grenemyer*, 745 P.2d

---

**5.** As of the date of the hearing before the hearing board, the respondent had performed only ten to

twenty hours of that community service work.

1027, 1029 (Colo.1987), not to mete out punishment to the offending lawyer. As officers of the court, however, lawyers are charged with obedience to the law, and intentional violation of those laws subjects an attorney to the severest discipline.

We therefore conclude that disbarment, as recommended by the hearing panel, is warranted.

### B.

The respondent contends that any discipline imposed should be made retroactive to September 7, 1993, the date on which he was suspended from the practice of law because of his felony conviction.

Under C.R.C.P. 241.21(a), orders imposing disbarment or suspension are effective thirty days after the date of the entry of the order or at such other time as this court may order. In *Abelman*, 804 P.2d at 862, we enumerated the factors that counsel for or against the imposition of retroactive discipline:

> whether the conduct is part of a continuing pattern or whether there is only a single instance of misconduct; whether there is a significantly attenuated relationship between the misconduct and the practice of law; and whether the passage of time mitigates the severity of the discipline required. *In re Silverman*, 113 N.J. 193, 225–228, 549 A.2d 1225, 1245–46 (1988); *see also In re Kotok*, 108 N.J. 314, 330, 528 A.2d 1307, 1315 (1987) (discussing propriety of retroactive discipline). The last factor—the remoteness of the misconduct—has two facets. The first is whether the passage of time itself has accomplished rehabilitation of the lawyer. *Silverman*, 113 N.J. at 227–28, 549 A.2d at 1246. The

second is whether the transgressions are so remote in time that intervening developments and current circumstances dilute the public interest in proper and prompt discipline. *Id.*

In the present case, the respondent engaged in a continuing pattern of misconduct, and the misconduct was directly related to the practice of law. Moreover, although the misconduct at issue took place in 1992 and early 1993, the record reveals that the respondent has not been rehabilitated in any meaningful fashion. Therefore, because of the multiple instances of misconduct, the fact that the misconduct was directly related to the practice of law, and because the ethical violations are not so remote in time as to compel a different result, we conclude that retroactive discipline is not appropriate here. *Abelman*, 804 P.2d at 863.

### IV.

It is hereby ordered that Jay E. Goldstein be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that Goldstein pay the costs of this proceeding in the amount of $1,998.19 within ninety days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.